STATE, Appellant, vs. STEHLEK, Respondent.

*December 1, 1952—January 6, 1953.*

644

For the appellant there were briefs by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *William J. McCauley,* district attorney of Milwaukee county, *Joseph E. Tierney,* deputy district attorney, and *James J. O'Donnell,* assistant district attorney, and oral argument by *Mr. Honeck* and *Mr. O'Donnell.*

*Michael D. Preston* of Milwaukee, for the respondent.

A brief was filed by *Glenn W. Stephens* of Madison, *Charles C. Collins* and *Ross D. Netherton,* both of Washington, D. C., and *Joseph H. Braun, Hugh Neill Johnson,* and *Philip E. Ryan,* all of Chicago, Illinois, as *amici curiae.*

FRITZ, C. J.  An examination of the statutes of the forty-eight states in the United States discloses that all have some type of safety-financial responsibility law regarding the operation of motor vehicles, and that forty-one states have substantially the same provisions as are in the "safety responsibility law" of the Wisconsin statutes, sec. 85.09 (5) (a) to (16) (c) ; and one state, Massachusetts, has a wholly compulsory automobile insurance law for accidents involving bodily injury or death.

The trial court assigned three additional grounds of invalidity, but respondent's sole challenge to the constitutionality of sec. 85.09 (5), Stats., was in the nature of a motion to dismiss this action on the ground that sec. 85.09 (5), Stats., "took away a privilege and a right given to a particular person without due process of law." The only evidence is that offered by the state, which shows that respondent's driver's license was duly suspended for failure to post security in compliance with the requirements of the safety responsibility law; and that he refused to surrender his license following his suspension upon the lawful demand in violation of the statute which makes such refusal a misdemeanor. Consequently, solely questions of law are presented, which can and must be determined by an examination of the statute itself, in the light of principles of construction applicable to questions involving the constitutionality of statutes.

It is a fundamental principal of statutory construction that a regularly enacted statute, or an order of an administrative body, made pursuant to statutory authority will be presumed to be constitutional until it has been declared to be otherwise by a competent tribunal. Such presumption is raised by the fact of the enactment of the statute by the legislature, and it extends to everything in the act on which it is based. The party attacking the statute has the burden of overcoming the presumption and showing that the statute is unconstitutional. The burden does not shift, because of the difficulty in proving it. 16 C. J. S., Constitutional Law, pp. 250–260, sec. 99.

The exercise of the power to declare laws unconstitutional by inferior courts should be carefully limited and avoided if possible. The authorities are to the effect that unless it appears clearly beyond a reasonable doubt that the statute is unconstitutional, it is considered better practice for the court to assume the statute is constitutional, until the contrary is decided by a court of appellate jurisdiction. That is especially true where, as in this case, the statute has been in effect

for nearly eight years, and has been enforced in innumerable cases.

Notwithstanding these well-established considerations, the trial court reversed its own policy of enforcing the law in question, sec. 85.09, Stats., and declared it to be unconstitutional. As the respondent offered no proof whatsoever on the trial, he has wholly failed to meet the burden of proof which the law has placed upon him or any party who attacks the constitutionality of a law.

The weight of authority is to the effect that the driving of an automobile upon public highways is a privilege, and not a property right; and is subject to reasonable regulation under the police power in the interest of public safety and welfare. *Sullins v. Butler,* 175 Tenn. 468, 471, 135 S. W. (2d) 930, citing 5 Am. Jur., Automobiles, p. 593, sec. 157; 42 C. J., Motor Vehicles, pp. 740, 746, secs. 210–229; *Hendrick v. Maryland,* 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385. In a leading case involving the financial responsibility law of New Hampshire, *Rosenblum v. Griffin,* 89 N. H. 314, 197 Atl. 701, 115 A. L. R. 1367, the court stated (p. 318):

> " '. . . the operation of an automobile upon the public highways is not a right but only a privilege which the state may grant or withhold at pleasure. (*Commonwealth v. Kingsbury,* 199 Mass. 542); and . . . what the state may withhold, it may grant upon condition. One condition is that the operator must, in case of accident, furnish the demanded information. This condition is binding upon all who accept the privilege. "The statute confers a privilege which the citizen is at liberty to accept by becoming a licensee, or not, as he pleases. Having accepted the privilege, he cannot object to any conditions which have been attached thereto by a grantor with power to entirely withhold the privilege." *State v. Corron,* 73 N. H. 434, 445.' "

In *Ballow v. Reeves* (Ky.), 238 S. W. (2d) 141, a financial responsibility law similar to sec. 85.09 (5) (a) to

(16) (c), Wis. Stats., was involved, and defendant's objection was that it deprived him of the use and enjoyment of his property without due process of law. In dismissing appellant's petition, the court stated (p. 142):

"The right to operate a motor vehicle is a privilege, subject to reasonable regulation by the state in the exercise of its police power, *Commonwealth v. Harris*, 278 Ky. 218, 128 S. W. (2d) 579. It has generally been recognized that financial responsibility laws constitute both reasonable regulations of the public highways, and proper measures to protect the public safety. See *In re Opinion of the Justices*, 81 N. H. 566, 129 Atl. 117, 39 A. L. R. 1023, and *Rosenblum v. Griffin*, 89 N. H. 314, 197 Atl. 701, 115 A. L. R. 1367."

To the same effect, in *Larr v. Dignan*, 317 Mich. 121, 26 N. W. (2d) 872, the court stated (p. 126):

"*In People v. Thompson*, 259 Mich. 109, 123, we said: 'In accepting the license (of operating a motor vehicle upon the public highways) from the state, one must also accept all reasonable conditions imposed by the state in granting the license. . . . It is elementary law, where special privileges are granted by the state, special duties in connection therewith may be exacted without providing compensation therefor. . . . The right to impose the condition is not based upon culpability, but instead it is incident to his status as a licensee.' "

In the case at bar, the trial court in apparently concluding that sec. 85.09, Stats., was unconstitutional, relied upon the assertion by defendant's counsel that:

"There is no provision in the section [85.09] for a court review of the proceedings by the commissioner excepting only that if the person notified succeeds in obtaining a judgment of a court absolving him from negligence he automatically becomes entitled to reinstatement."

When the conditions imposed by the legislature, requiring the commissioner to suspend a license have been fulfilled, by

acts or omissions of the licensee, the commissioner's duty to suspend is mandatory. His function in carrying out the will and mandate of the legislature is purely ministerial. The legislature has factually determined and expressed that determination in the statute itself, as to when and under what circumstances a license shall be suspended. There is then no need for reviewing the commissioner's acts, unless he has deviated from the terms of the statute. However, in those particulars where the commissioner exercises some measure of discretion, there is provision for reviewing his acts. For example, the amount of security demanded by the commissioner is subject to review by the court under sec. 85.09 (2) (b), Stats., which provides:

"Any person aggrieved by an order or act of the commissioner, under the provisions of chapter 227, may, within ten days after notice thereof, file a petition in the circuit court of Dane county for a review thereof; but the filing of such a petition shall not suspend the order or act unless a stay thereof shall be allowed by a judge of said court pending final determination of the review. The court shall summarily hear the petition and may make any appropriate order or decree."

Thus, in *Matter of Heart v. Fletcher,* 184 Misc. 659, 53 N. Y. Supp. (2d) 369, the court stated (p. 662):

"The payment by the petitioner of the required fees upon the issuance to him of the operator's license and registration certificate did not convert the privilege granted into a property right of which he might not be deprived without a notice and hearing, *i. e.,* due process of law. The privilege was granted subject to the terms of prescribed statutory conditions of which section 94–e of the Vehicle and Traffic Law was a part. In *Reitz v. Mealey* (314 U. S. 33, 36), . . ."

Although sec. 85.09 (9), Stats., calls for security in such amount as the commissioner may require, it places a ceiling on that amount by reciting that it shall not exceed a sum certain, and the provisions authorizing the commissioner to

fix an amount less than the maximum are solely for the benefit of persons in the position of the respondent, and they cannot be heard to complain that this is a denial of due process. Moreover, sec. 85.09 (9) (b), Stats., expressly provides:

"The commissioner may reduce the amount of security ordered in any case within six months after the date of the accident if, in his judgment, the amount ordered is excessive. In case the security originally ordered has been deposited the excess deposited over the reduced amount ordered shall be returned to the depositor or his personal representative forthwith, notwithstanding the provisions of subsection (10)."

Any appropriate means adopted by the legislature to insure competence and care on the part of its licensees and to protect others using the highways is consonant with due process. Suspension of a license without a prior hearing, but subject to subsequent judicial review, does not violate *due process* if reasonably justified by a compelling public interest. Respondent contends that sec. 85.09 (5) (a), Stats., is unconstitutional in that it fails to provide respondent with *due process of law,* as guaranteed to him and all persons by the provisions in secs. 1, 9, art. I of the constitution of Wisconsin. It seems to be counsel's contention that such due process can be afforded only through the agency of a court of law, and that the commissioner's act in determining the amount of security required to be deposited is a judicial act. In *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595, this court gave a fundamental exposition of due process in these words (p. 240):

"What is due process of law? There is nothing very technical about it when we view the subject broadly. Due process of law means, in brief, the law of the land—including the unwritten law. It is, simply, that which must be followed in depriving any one of anything which is his to enjoy until he shall have been divested thereof by and according to the

law of his country. Whether the proceedings relate to liberty or property, in the technical sense, and be of a strictly judicial nature, or to mere privilege, immunity, status, or anything else of value, which commonly are of a quasi-judicial nature, incidental to or as a part of administrative authority, and reviewable by courts as to jurisdictional matters, or, of a purely ministerial nature where the thing is a mere creature of the law granted upon condition of being so dealt with, due process of law pervades and rules them all."

Statutes enacted under the police power which dispense with hearings preliminary to suspension of licenses are not unique or peculiar to the field of drivers' licenses. The deliberate omission of hearing procedure preliminary to the suspension of a license in the field of motor vehicle operators' licenses does not offend the due-process clauses of the United States and state constitutions and is neither new nor different from other licensing fields subject to regulation under the police power. In *Halsey, Stuart & Co. v. Public Service Comm.* 212 Wis. 184, 248 N. W. 458, the court made a most effective statement of the law in a case where the injury or damage to the licensee resulting from such summary suspension is much greater and more serious and enduring than in the present instance. In that case the statute authorized the public service commission to summarily suspend the license of any broker dealing in securities without preliminary hearing if the commission had reason to believe that the general business methods of such business broker or agent are unfair or inequitable, or has engaged, or is about to engage, in any fraudulent transaction. Halsey, Stuart & Company had a volume of business in Wisconsin, claimed to be from twelve to nineteen million dollars per year. The public service commission learned from information in the daily press that "some of the principal officers of said company have been indicted by the United States government, and arrested under warrants charging use of the mails to defraud." The commission summarily suspended the company's brokerage license

to deal in securities. In dealing with the question of whether a hearing was necessary prior to the suspension, Mr. Justice WICKHEM, speaking for the court stated (p. 193):

"The purpose of the suspension provision is clear. It is to give to the commission the power to act at once to protect the public from imposition. This being the legislative intent, two questions immediately present themselves. The first is whether the statute, as thus construed, is unconstitutional and void as denying to plaintiff due process of law. We cannot assent to the contention that it is.

"It is said that there is no provision for a hearing. It is true that there is none prior to suspension. *We do not regard this as fatal to the validity of the law.* Having in mind that this is an exercise of the police power, and that it is valid in so far as it is reasonably necessary and appropriate to the promotion of the public welfare, it seems to us that the act must be sustained. The court may take notice of the fact that much harm may come to the citizens of the state, and that they may be the victims of much fraud and imposition unless they are speedily protected from improper practices in the sale of securities. Having in mind modern sales methods and the speed at which the business of today is done, *promptness of action on the part of the commission may be the measure of its effectiveness. While the suspension may seriously damage the business of a particular broker, this consideration is not fatal to the validity of the act, provided it is reasonably necessary to protect the public. The rights of the public to exercise the police power in its own protection are superior to those of any individual broker to sell under his license or certificate.*"

In *Anderson Nat. Bank v. Luckett,* 321 U. S. 233, 64 Sup. Ct. 599, 88 L. Ed. 692, 151 A. L. R. 824, the United States supreme court clearly established that it is not an indispensable requirement of due process that every procedure affecting the ownership or disposition of property be exclusively by judicial proceeding. There the court stated, as quoted in *Matter of Heart v. Fletcher,* 184 Misc. 659, 663, 53 N. Y. Supp. (2d) 369:

" 'What is due process in a procedure affecting property interests must be determined by taking into account the purposes of the procedure and its effect upon the rights asserted and all other circumstances which may render the proceeding appropriate to the nature of the case. [Citing cases.] The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked. If that is preserved, the demands of due process are fulfilled. . . . For this reason also it is not an indispensable requirement of due process that every procedure affecting the ownership or disposition of property be exclusively by judicial proceeding. Statutory proceedings affecting property rights, which, by later resort to the courts, secure to adverse parties an opportunity to be heard, suitable to the occasion, do not deny due process.' This rule is particularly true when the initial or preliminary act is an administrative one—as was the act of the respondent in preparing and serving the notice of suspension on the petitioner in the instant case. It seems that the requirement of due process is satisfied if the administrative action may be stayed and the aggrieved party may challenge the act in a judicial proceeding." (Citations.)

Decisions of appellate courts in other states which have safety responsibility laws that are close in terminology to sec. 85.09 (5), Wis. Stats. (all having been patterned after the model act), completely answer and refute all contentions asserted by the respondent, and the trial court in its decision.

The cases on which the appellant principally relies are: *Escobedo v. State of California,* 35 Cal. (2d) 870, 222 Pac. (2d) 1; *Doyle v. Kahl,* 242 Iowa, 153, 46 N. W. (2d) 52; and *Matter of Heart v. Fletcher, supra.*

In those cases, all the grounds asserted in the trial court's opinion adjudging such statutes as sec. 85.09 (5), Stats., to be invalid, were considered and disposed of upon sound reasoning and abundant authority.

In respect to respondent's contention in relation to lack of due process, the supreme court of California rightly stated in *Escobedo v. State of California, supra* (p. 876) :

". . . it is . . . well established . . . that usage of the highways is subject to reasonable regulation for the public good. In this connection, the constitutionality of various types of financial responsibility laws has been often upheld against contentions that they violated the due-process clause of the Fourteenth amendment. 'The use of the public highways by motor vehicles, with its constant dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers. Any appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process.' [Citing *Reitz v. Mealey,* 314 U. S. 33, 36, (62 Sup. Ct. 24, 86 L. Ed. 21, 24) ; and other cases including *Surtman v. Secretary of State,* 309 Mich. 270, 15 N. W. (2d) 471, 474.]

"The state, in the exercise of its police power, could constitutionally have required deposit of security by the owners of all vehicles as a condition to licensing them. (*Opinion of the Justices, In re* (1925), 81 N. H. 566, [129 Atl. 117, 39 A. L. R. 1023] ; *Opinion of the Justices, In re* (1925), 251 Mass. 569, [147 N. E. 681] ; *Brest v. Commissioner of Insurance,* (1930), 270 Mass. 7, [169 N. E. 657] ; *Ex parte Poresky,* (1933), 290 U. S. 30, [54 Sup. Ct. 3, 78 L. Ed. 152].) Instead, the state chose to allow financially irresponsible licensed operators to drive until they became involved in an accident with the consequences described in sections 419 and 420 of the Vehicle Code, and their financial irresponsibility was thus brought to the attention of the department, and then to require suspension of their licenses.

"Suspension of the license without prior hearing but subject to subsequent judicial review did not violate due process if reasonably justified by a compelling public interest. (*Bourjois v. Chapman* (1937), 301 U. S. 183, 189, [57 Sup. Ct. 691, 81 L. Ed. 1027, 1032] ; See also *Phillips v. Commissioner of Internal Rev.* (1931), 283 U. S. 589, 596, 597, [51 Sup. Ct. 608, 75 L. Ed. 1289].) The compelling public interest here appears from the obvious carelessness and financial irresponsibility of a substantial number of drivers and from the following allegations of the petition: There are 3,879,931 motor vehicles registered in California. During

the first four months after the effective date of the law now under consideration, 19,808 persons were ordered by the department to establish that they were adequately insured or deposit security. More than 6,567 operators' licenses were suspended under the applicable law, and more than 1,300 'citations per month for suspension of license' were issued by the department. In these circumstances it is apparent that to require a hearing in every case before suspension of a license would have substantially burdened and delayed if not defeated the operation of the law."

In the case at bar, the state contends that a comparison of Wisconsin statistics on accidents, notices of insurance, notices of suspension, and orders of suspension on a monthly basis for the year 1952 through October, with the statistics cited by the California supreme court in the above opinion, demonstrates likewise the "compelling public interest," and imperative necessity for using the summary-suspension procedure without a preliminary hearing. The compilation of statistics which are part of the official records of a department of the state government, are matters of which this court may take judicial notice. *State ex rel. Martin v. Barrett,* 248 Wis. 621, 630, 22 N. W. (2d) 663. Thus, the official compilations show in a separate column of figures in each month: (1) The number of automobile accidents, which occur in Wisconsin; that require reports to the state motor vehicle department; (2) the number of insured motorists whose insurance carrier furnished a written report to the motor vehicle department, thereby relieving the licensee of the requirement of posting security; (3) the number of licensees whose failure to carry insurance requiring notices in the alternative to deposit security, or be subject to license suspension; and (4) the number of licensees who fail to post security and whose licenses were ordered suspended on a mandatory basis. Respondent's case falls within that fourth column of figures, and it is evident that by the method adopted there have been eliminated many unnecessary hearings.

In *Ballow v. Reeves, supra,* the constitutionality of the Kentucky financial responsibility statute was challenged by a licensee who had been ordered to make a cash deposit or furnish evidence of his financial responsibility. The court stated (p. 142):

"The question of negligence has nothing to do with the matter. The requirement of financial responsibility does not in any sense predetermine the question of liability, which could only be decided in a judicial proceeding. It simply furnishes an added protection to the public and better assures the safety of our highways, and is not dependent upon the operator's skill or lack of it. The statute is not unreasonable in failing to require a showing of negligence prior to suspension of the license. . . . *Rosenblum v. Griffin,* . . . 89 N. H. 314, 197 Atl. 701, 115 A. L. R. 1367."

As stated in *Escobedo v. State of California, supra* (p. 878):

"Financial responsibility laws such as this do not unconstitutionally discriminate against the poor. (See *Watson v. Division of Motor Vehicles* (1931), 212 Cal. 279, 284 [298 Pac. 481]; *Rosenblum v. Griffin* (1938), 89 N. H. 314, 319 [197 Atl. 701, 115 A. L. R. 1367].) Those damaged by the negligence of indigent drivers may be indigent also, and as little able as the drivers to bear the cost of such negligence. The fallacy of the argument that the law favored the rich over the poor 'lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the constitution is the equality of right, and not enjoyment.' (*Watson v. Division of Motor Vehicles* (1931), supra, p. 284 of 212 Cal.) Those who cannot afford to possess automobiles are as little able to enjoy the opportunity of driving on the public highways as those who cannot afford insurance or security."

In *Rosenblum v. Griffin, supra,* the court stated (p. 319):

"So far as classification is here involved, no one is unconstitutionally denied the privilege of the use of the highways with a motor vehicle. The terms and conditions of the priv-

ilege are applicable to all who avail themselves of it. They may be unfair and unreasonable, in fact, but they are not invalid. There is equality of treatment. Every licensee takes his license on the condition that if he meets with an accident while operating a car, his further right to operate shall depend upon his having or furnishing security for any liability arising out of the accident or any future accident.

"Classification between those who may and who may not have the privilege of highway use of motor vehicles must be reasonable, but the privilege itself need not be; nor does the classification based upon an accident come within the operative effect of the constitution, since it is one to which the licensee voluntarily consents as a condition of his acceptance of the license. There is no discrimination. All who fail to comply with specified terms suffer specified consequences. Meeting the terms, they avoid the consequences. The terms may be that events and occurrences, as well as conduct, shall provoke the consequences.

"Inability to meet the terms may be a misfortune, and so may be inability to become a licensee. Lack of resources to maintain and drive a car and their lack to own a car do not stand differently. What may or may not be. afforded is not a matter of constitutional concern in respect to equality and discrimination. Equality of right implies no equality of ability or means."

As stated in *Hadden v. Aitken* (Neb.), 55 N. W. (2d) 620, in relation to a statute to the same effect (p. 623) :

"The purpose of this act is to protect the public on the highways against the operation of motor vehicles by financially irresponsible persons and thus is referable to the police power of the state. This power is inherent in every sovereignty and permits the enactment of laws, within constitutional limits, to promote the general welfare of its citizens. Therefore, in the interests of the public the state may make and enforce regulations reasonably calculated to promote care on the part of all who use its highways."

The trial court concluded that the safety-financial responsibility law violates the state constitution in delegating judi-

cial functions to an administrative officer. That contention cannot be sustained. In *State v. Marcus,* 259 Wis. 543, 49 N. W. (2d) 447, we dealt with the question of whether the suspension of a driver's license is an administrative or judicial function, and we concluded that, as was stated in *Cincinnati v. Wright,* 77 Ohio App. 261, 67 N. E. (2d) 358:

". . . the granting, suspension, or revocation of licenses to operate motor vehicles are legislative and executive functions, and that the power to grant, suspend, and revoke such licenses can be conferred on administrative officers, as well as on courts, and therefore a motorist who was charged with violating a municipal ordinance which authorized the court to suspend his driver's license on conviction was not entitled to a jury trial. The Ohio court of appeals in its opinion quoted the following statement appearing in 5 Am. Jur., Automobiles, p. 593, sec. 157 : 'It is competent for the legislature to prescribe the conditions under which the privilege of operating an automobile on the public highways may be exercised.' " (*State v. Marcus,* 259 Wis. 543, 550.)

Following that rule, we stated (p. 550) :

" 'This regulatory power, like all other phases of the police power, is legislative and administrative, and when properly exercised presents no occasion for the exercise of the judicial power.' "

Consequently, in that respect, the decision in *State v. Marcus, supra,* completely disposes of the trial court's contention that, in so far as the broad question is concerned, the power to suspend licenses is not properly delegable to an administrative officer. When the statutory grounds for suspension have come into being, because of the driver's involvement in an accident and his subsequent refusal or failure to post security, the motor vehicle commissioner has no discretion. He is merely required to perform a ministerial function, and the only area in which some measure of discretion may be seem-

658

ingly involved is the matter of fixing the amount of security which the licensee is required to post pursuant to sec. 85.09 (5), Stats.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with conclusions stated in the opinion, and the entry of judgment accordingly.