WHITE HOUSE MILK COMPANY, INC., Respondent, v.
REYNOLDS, Attorney General, and others, Appellants.

*October 31—December 2, 1960.*

144

For the appellants the cause was argued by *Albert O. Harriman* and *George F. Sieker,* assistant attorneys general, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondent there was a brief by *Michael, Spohn, Best & Friedrich,* attorneys, and *Kenneth K. Luce* and *John K. MacIver* of counsel, all of Milwaukee, and oral argument by *Mr. Luce.*

DIETERICH, J.    Sec. 100.22, Stats., provides:

"UNFAIR DISCRIMINATION IN PURCHASE OF DAIRY PRODUCTS.  (1) Any person, firm, or corporation, foreign or domestic, engaged in the business of buying milk, cream, or butterfat for the purpose of manufacture, that shall discriminate between different sections, communities, towns, villages, or cities of this state, or between persons, firms, or corporations in any locality of this state, by paying for such commodity at a higher price or rate in one section, community, town, village, or city, or to any person, firm, or corporation in any locality of this state, than is paid for the same commodity by said person, firm, or corporation, foreign or domestic, in another section, community, town, village, or city, or to another person, firm, or corporation in any locality of this state, shall be guilty of unfair discrimination, which is hereby prohibited and declared unlawful; provided, that it shall be a justification for such a discrimination in price if the difference is merely commensurate with an actual difference in the quality or quantity of the commodity purchased or in transportation charges or other expense of marketing involved in said purchase."

Plaintiff contends that sec. 100.22, Stats., is a violation of the Fourteenth amendment to the constitution of the

United States because a Minnesota statute, identical in substance, and parallel in its legislative history, was held to be such violation in *Fairmont Creamery Co. v. Minnesota* (1927), 274 U. S. 1, 47 Sup. Ct. 506, 71 L. Ed. 893.

Neither the Minnesota statute nor sec. 100.22, Stats., required the state to prove a buyer's intent to injure a competitor or limit competition, or permitted the buyer to defend by proving that his price variation was necessary in order to meet competition.

In *Fairmont,* the supreme court held (p. 8) :

"As the inhibition of the statute applies irrespective of motive, we have an obvious attempt to destroy plaintiff in error's liberty to enter into normal contracts long regarded not only as essential to the freedom of trade and commerce but also as beneficial to the public. Buyers in competitive markets must accommodate their bids to prices offered by others, and the payment of different prices at different places is the ordinary consequent. Enforcement of the statute would amount to fixing the price at which plaintiff in error may buy, since one purchase would establish this for all points without regard to ordinary trade conditions.

"The real question comes to this—May the state, in order to prevent some strong buyers of cream from doing things which may tend to monopoly, inhibit plaintiff in error from carrying on its business in the usual way heretofore regarded as both moral and beneficial to the public and not shown now to be accompanied by evil results as ordinary incidents? Former decisions here require a negative answer. We think the inhibition of the statute has no reasonable relation to the anticipated evil—high bidding by some with purpose to monopolize or destroy competition. Looking through form to substance, it clearly and unmistakably infringes private rights whose exercise does not ordinarily produce evil consequences, but the reverse."

The *Fairmont* decision has never been expressly overruled, but later decisions at least limit, and perhaps repudiate, in fact though not in words, its doctrine.

In *Nebbia v. New York* (1934), 291 U. S. 502, 54 Sup. Ct. 505, 78 L. Ed. 940, decided only six years after the

*Fairmont Case,* the United States supreme court upheld the constitutionality of a New York statute providing for fixing of prices of milk, and stated (pp. 524, 525):

"Thus has this court from the early days affirmed that the power to promote the general welfare is inherent in government. . . .

"The Fifth amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts."

The minority opinion in the *Nebbia Case* of the four dissenting justices placed great reliance upon the *Fairmont Case* and considered that the holding in the former could not be squared with the decision in the latter. We think that such a conclusion is well warranted and undoubtedly the determination in the *Nebbia Case* casts serious doubt on the authority of the *Fairmont Case* as a binding precedent.

The holding in the *Fairmont Case* was grounded on the principle that the Minnesota statute, which is comparable to sec. 100.22, Wis. Stats., was a denial of freedom of contract which violated due process. However, there has not been a single state regulatory statute struck down on the ground of a violation of freedom of contract since the 1937 decision in *West Coast Hotel Co. v. Parrish* (1937), 300 U. S. 379, 391, 57 Sup. Ct. 578, 81 L. Ed. 703, wherein the court stated:

"The constitution does not speak of freedom of contract. It speaks of liberty and prohibits the deprivation of liberty without due process of law. In prohibiting that deprivation the constitution does not recognize an absolute and uncontrollable liberty. Liberty in each of its phases has its history and connotation. But the liberty safeguarded is liberty in a social organization which requires the protection of law against the evils which menace the health, safety, morals, and welfare of the people. Liberty under the constitution is thus necessarily subject to the restraints of due process, and regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process.

"This essential limitation of liberty in general governs freedom of contract in particular. More than twenty-five years ago we set forth the applicable principle in these words, after referring to the cases where the liberty guaranteed by the Fourteenth amendment had been broadly described:

" 'But it was recognized in the cases cited, as in many others, that freedom of contract is a qualified and not an absolute right. There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community.' *Chicago, B. & Q. R. Co. v. McGuire,* 219 U. S. 549, 567."

The trend of decisions of the United States supreme court so apparent since 1937, in refusing to invalidate state regulatory legislation on the ground of violation of due process, is highlighted by the following remark of Mr. Justice DOUGLAS, speaking for the entire court in *Williamson v. Lee Optical Co.* (1955), 348 U. S. 483, 488, 75 Sup. Ct. 461, 99 L. Ed. 563:

"The day is gone when this court uses the due-process clause of the Fourteenth amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony

with a particular school of thought. See *Nebbia v. New York*, 291 U. S. 502; *West Coast Hotel Co. v. Parrish*, 300 U. S. 379; *Olsen v. Nebraska*, 313 U. S. 236; *Lincoln Union v. Northwestern Co.* 335 U. S. 525; *Daniel v. Family Ins. Co.* 336 U. S. 220; *Day-Brite Lighting, Inc., v. Missouri*, 342 U. S. 421. We emphasize again what Mr. Chief Justice WAITE said in *Munn v. Illinois*, 94 U. S. 113, 134, 'For protection against abuses by legislatures the people must resort to the polls, not to the courts.' "

We conclude that the facts pertaining to the marketing of milk in Wisconsin, the evils which may reasonably be thought to result if buyers are legally free to offer different prices to different persons or in different localities, and the results which may reasonably be thought to flow from the existence and enforcement of sec. 100.22, Stats., should be re-examined, and the questioned validity of sec. 100.22, freshly resolved upon a record which presents the pertinent facts.

This is to be done in the light of established principles. A statute is presumed to be constitutional and will be held unconstitutional only when it so appears beyond a reasonable doubt. *A B C Auto Sales, Inc., v. Marcus* (1949), 255 Wis. 325, 38 N. W. (2d) 708.

In *State v. Stehlek* (1953), 262 Wis. 642, 645, 56 N. W. (2d) 514, it is stated:

"The exercise of the power to declare laws unconstitutional by inferior courts should be carefully limited and avoided if possible. The authorities are to the effect that unless it appears clearly beyond a reasonable doubt that the statute is unconstitutional, it is considered better practice for the court to assume the statute is constitutional, until the contrary is decided by a court of appellate jurisdiction. That is especially true where, as in this case, the statute has been in effect for nearly eight years, and has been enforced in innumerable cases."

It is an elementary principle of law in this state that this court will search for a means to sustain a statute and will not

infer or go out of its way to find means with which to condemn a statute adopted by the legislature. In fact, this court has in the past and will continue to sustain the constitutionality of a statute if any facts can be reasonably conceived which will support its constitutionality. Thus, the burden of establishing the unconstitutionality of a statute is on the person attacking it, who must overcome the strong presumption in favor of its validity. In *State ex rel. Carnation Milk Products Co. v. Emery* (1922), 178 Wis. 147, 160, 189 N. W. 564, it is stated:

"If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. The court cannot try the legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court."

The burden rests with the party challenging a statute to negate every conceivable basis which may reasonably support the statute's constitutionality. A statute will be held constitutional unless the court can say that no state of facts can reasonably be conceived that would sustain it. *State v. Neveau* (1941), 237 Wis. 85, 294 N. W. 796.

It has also been stated that questions of economic wisdom, the social or political policy, the advisability, or the justice of a statute are for the legislature and not for the courts. *Gibson Auto Co. v. Finnegan* (1935), 217 Wis. 401, 259 N. W. 420.

The judicial process involved in testing the constitutionality of a regulatory statute like sec. 100.22 is quite different from that involved in ordinary adjudications. We are not to resolve an issue of fact; we are to determine whether propositions which the legislature deemed to be facts, and upon which it presumably based its decision to legislate,

"may be reasonably conceived [as facts] in the mind of the court." *Ritholz v. Johnson* (1944), 244 Wis. 494, 501, 12 N. W. (2d) 738. We are not to determine whether a proposition asserted as fact is true; we are to determine whether the legislature could reasonably consider it to be true. Many of the peculiarities of this judicial process are noted and discussed in the *Ritholz* decision.

Because of the peculiar situation before us, where a statute of identical substance was held unconstitutional by the supreme court of the United States in 1927, but where there is good reason to conclude that that decision has been severely limited, if not repudiated, we deem it of the utmost importance that the pertinent facts be brought as fully into the record as possible before a decision is reached. We conclude that the procedure adopted in the *Ritholz Case* (set forth at page 504) should be followed here:

"In this case an answer should be filed setting up the facts which the defendants claim warranted the enactment of this particular legislation. If there is a dispute as to the facts, the facts should be ascertained by a judicial investigation in the trial court. While neither this court nor the trial court will be bound by the facts so found, they will have relevant information now denied to them. Upon this ground and only upon this ground we now hold that the demurrer to the complaint in the trial court was properly overruled."

*By the Court.*—Judgment reversed, and the injunction dissolved; in so far as the order entered January 5, 1960, overruled defendants' demurrer, it is affirmed; and the cause is remanded with directions to permit the defendants to answer and for further proceedings not inconsistent with the opinion filed herein.

BROWN, J. (*dissenting*). Respectfully, I must dissent. In 1927 the state of Minnesota had a statute which, in every essential, is the Wisconsin statute now before us. The Minne-

sota statute came before the United States supreme court and that court held the statute to be unconstitutional as a violation of the Fourteenth amendment of the United States constitution. *Fairmont Creamery Co. v. Minnesota* (1927), 274 U. S. 1, 47 Sup. Ct. 506, 71 L. Ed. 893. That decision has not been reversed or overruled. The learned trial judge, in the opinion which he filed in the case at bar, stated that the *Fairmont Case* controls the instant one, determining that the Wisconsin statute violates the same provisions of the United States constitution for the reasons given in *Fairmont, supra.*

To this, appellant replies only that present-day thinking on constitutional questions has changed and at present the United States supreme court would sustain the constitutionality of the statute and *Fairmont* is no longer the law.

The justices of that court may be permitted to speak for themselves. Neither in *Nebbia v. New York* (1934), 291 U. S. 502, 54 Sup. Ct. 505, 78 L. Ed. 940, nor in *United States v. Rock Royal Co-op.* (1939), 307 U. S. 533, 59 Sup. Ct. 993, 83 L. Ed. 1446, nor in any other case have they reversed or overruled *Fairmont Co. v. Minnesota, supra.* Their last word (in the *Fairmont Case*) declared a statute such as ours violates the constitution. While that case is neither reversed nor overruled, *Fairmont Co. v. Minnesota* is the law and this court should be governed by it.

Mr. Justice HALLOWS respectfully joins in this dissent.