ED JACKAMONIS, Speaker State Assembly
The Assembly Organization Committee has requested my opinion as to the constitutionality of ch. 45, secs. 21, 22 and 27, Laws of 1981. These sections empower the Commissioners of Credit Unions, Savings and Loan and Banking, upon approval of their respective boards, to promulgate rules authorizing the financial institutions which they regulate to exercise any right, power or privilege of their federal counterparts permitted under federal law. In particular, the Committee asks whether these sections constitute an improper delegation of legislative power on the grounds that they adopt not only present federal laws but future ones as well and they authorize the Commissioners to adopt rules that are contrary to statutes.
Chapter 45, sec. 21, Laws of 1981, creates the following statutory subsection:
 186.012(4) Unless the commissioner is expressly restricted by statute from acting under this subsection with respect to a specific power, right or privilege, the commissioner by rule may, with the approval of the credit union review board, authorize credit unions to exercise any power under the notice, disclosure or procedural requirements governing federally chartered credit unions or to make any loan or investment or exercise any right, power or privilege of federally chartered credit unions permitted under a federal law, regulation or interpretation. Notice, disclosure and procedures prescribed by statute *Page 196 
which may be modified by a rule adopted under this subsection include, but are not limited to, those provided under s. 138.056. A rule adopted under this subsection may not affect s. 138.041 or chs. 421 to 428 or restrict powers granted credit unions under this chapter.
Chapter 45, secs. 22 and 27, Laws of 1981, create secs.215.02(18) and 220.04(8), Stats., respectively, which contain virtually the same language applicable to savings and loan associations and banks.
All legislation enjoys a strong presumption of constitutionality.
 It is an elementary principle of law in this state that this court will search for a means to sustain a statute and will not infer or go out of its way to find means with which to condemn a statute adopted by the legislature. In fact, this court has in the past and will continue to sustain the constitutionality of a statute if any facts can be reasonably conceived which will support its constitutionality. Thus, the burden of establishing the unconstitutionality of a statute is on the person attacking it, who must overcome the strong presumption in favor of its validity.
White House Milk Company, Inc. v. Reynolds, 12 Wis.2d 143,150-51, 106 N.W.2d 441 (1960). The person attacking a statute has the burden of overcoming the presumption of constitutionality by demonstrating unconstitutionality beyond a reasonable doubt. Wis.Bingo Sup. Equip. Co. v. Bingo Control Bd., 88 Wis.2d 293,301, 276 N.W.2d 716 (1979).
Before applying these principles to the particular questions posed, I first must note that my role in rendering opinions on legislation already enacted differs from my role in regard to proposed legislative action. Once legislation is enacted, it becomes the affirmative duty of the Attorney General to defend its constitutionality. Chicago N.W. K. Co. v. La Follette,27 Wis.2d 505, 523, 135 N.W.2d 269 (1965). Prior to enactment, however, no such obligation exists. In the present circumstance, therefore, where questions are raised concerning legislation already enacted, my response depends on whether a reasonable defense of the legislation is available, not whether I would have found the bill constitutional had it been presented to me prior to passage. *Page 197 
I believe a reasonable defense of this legislation can be made by arguing, first, that there is no delegation of legislative power to the federal government in the instant case. The federal enactments do not automatically become effective. By stating "the commissioner by rule may, with the approval of the . . . review board, authorize [state financial institutions] to exercise any . . . power, right or privilege of federally chartered [financial institutions] permitted under federal law, regulation or interpretation," the Legislature has provided that any federal enactment is subject to review by an administrative agency to determine whether all or any part is appropriate for Wisconsin. The mere possibility of new regulations resulting from enactment of ch. 45, Laws of 1981, does not constitute a delegation of legislative authority to the federal government, particularly since ultimate responsibility remains with the state administrative agency. Niagara of Wisconsin Paper Company v. DNR,84 Wis.2d 32, 52, 268 N.W.2d 153 (1978); Joint School Dist. No.8 v. Wis. E. R. Board, 37 Wis.2d 483, 494, 155 N.W.2d 78 (1967).
Moreover, these sections arguably pass constitutional muster under the standards for testing the constitutionality of delegation generally. In State (Department of Administration) v.ILHR Department, 77 Wis.2d 126, 134, 252 N.W.2d 353 (1977), the court set forth the standards for review of delegations of authority to administrative agencies as follows:
 In determining whether the legislature has properly delegated its power to an agency, this court applies the following rule:
 "`A delegation of legislative power to a subordinate agency will be upheld if the purpose of the delegating statute is ascertainable and there are procedural safeguards to insure that the board or agency acts within that legislative purpose.'"
The purpose of the delegating statutes in question, to permit state agencies by rule to allow state-chartered financial institutions to achieve or maintain parity with their federal competitors, is ascertainable from the language and context of the statutes. On their face, these provisions enable identity of treatment between state and federal institutions, and they specifically forbid the Commissioners from adopting a rule which would affect the parity provisions of sec. 138.041, Stats. Furthermore, the legislative history reveals a purpose *Page 198 
to attain federal-state parity. See Summary of the June 4, 1981, Proceedings of the Legislative Council's Special Committee on Interest Rate Practices, page 3, Agenda Item 4. In addition, the procedural safeguards of public hearings and the opportunity for judicial review of such rules' validity are met. See ILHRDepartment, 77 Wis.2d at 135.
I turn now to the Assembly Organization Committee's concern with the ability of the commissioners and the boards to override statutes by rule, referring to the sentence in each of the sections which states: "Notice, disclosure and procedures prescribed by statute which may be modified by a rule adopted under this subsection include, but are not limited to, those provided under s. 138.056."
The general rule is that the Legislature may give an administrative body "the power to suspend or repeal prior legislative enactments by administrative regulation within the standard designated by the statute giving the administrative body the power to act." Sutherland, Statutes and StatutoryConstruction, 4th ed., § 23.19. Wisconsin is in accord with this rule. Wisconsin Telephone Co. v. Public Service Comm.,206 Wis. 589, 596-99, 240 N.W. 411 (1932). The United States Supreme Court has also affirmed the constitutionality of statutes empowering an administrative agency to dispense with stated statutory limitations when necessary. Intermountain Rate Cases,234 U.S. 476 (1914); Sproles v. Binford, 286 U.S. 374 (1932). Seegenerally Note, The Power of Dispensation in Administrative Law— A Critical Survey, 87 Pa. L. Rev. 201 (1938).
Applying these principles to the statutes at hand, at least a considerable number of the provisions can be argued to be initial findings of fact which the Legislature could permit the administrative agencies to modify as may be needed to achieve the overall legislative objective to preserve federal-state parity among financial institutions. For example, sec. 138.056(2)(c). Stats., states that a variable rate loan contract shall provide for a term of not more than forty years. It is arguably competent of the Legislature to enable the commissioners and their boards to modify the maximum length of these loans if necessary to maintain a competitively healthy state financial climate. I cannot assure you with certainty, however, that each and every potential administrative change of statutory terms would survive constitutional attack. Each case must be determined on its own facts. As a general matter, however, I can argue that the courts *Page 199 
should uphold the action of the commissioners and the boards in modifying these statutes so long as the modification is reasonably calculated to maintain federal-state competitive parity and is not a change in fundamental legislative policy.
Accordingly, reasonable argument can he made that this legislation is constitutional on its face, although future action of the commissioners and their boards may be subject to judicial review on constitutional grounds.
BCL:CDH:th