MILWAUKEE COUNTY, Plaintiff and Respondent, vs. TOWN OF LAKE and others, Defendants and Appellants: BOYNTON CAB COMPANY and another, Interpleaded Defendants and Respondents.

*April 4—May 8, 1951.*

210

212

214

220

For the appellants there was a brief by *George A. Bowman* and *William H. Bowman,* both of Milwaukee, and oral argument by *George A. Bowman.*

For the respondents there was a brief by *William J. Mc-Cauley,* district attorney, and *Oliver L. O'Boyle,* corporation counsel, for Milwaukee county, and by *Dougherty, Arnold & Waters* of Milwaukee, for the Boynton Cab Company and Robert De Meaux, and oral argument by *Mr. O'Boyle* and *Mr. Suel O. Arnold.*

FAIRCHILD, J. A municipality owning an airport and operating it under a valid statute is entitled, through its governing body, to provide for the enforcement of regulations duly adopted by the municipality, ch. 114, Stats. 1949.

Because of the nature and purpose of airports, they are usually located a sufficient distance from thickly settled areas to provide safety for the planes utilizing the facilities, as well as for the safety and comfort of the residents of a given territory. The location of the airport, therefore, at a distance from a populous city of the county owning such airport would necessarily place upon the governing body the duty of giving consideration to ground transportation of the patrons. Reasonable rules and regulations must be adopted. See Anno. 161 A. L. R. 748. It was held in *Weinstein v. McKenzie,*

177 Misc. 451, 30 N. Y. Supp. (2d) 733, that New York City had the power to adopt a regulation specifying the manner in which taxicabs may solicit passengers at the La Guardia Field, a municipal airport. From textbooks on the subject of managing and operating airports, there appears to be a general recognition of the right to make workable and reasonable regulations.

The appellants here take the position that the county of Milwaukee, the owner of the airport, has exceeded its authority in the exercise of its controlling power with relation to ground transportation within the airport. This claim of excess of authority is based upon regulations of the respondent county and the contracts entered into by it with the airplane companies which use the facilities of the airport.

Acting under the terms of ch. 114, Stats., the county has entered into certain contracts providing for the use of the field by certain air-line companies and has made provision for the management and maintenance thereof as described in the findings of fact in the statement of facts preceding this opinion. The contracts referred to are with the Capital Airlines, Inc., Northwest Airlines, Inc., American Airlines, Inc., United Airlines, and Wisconsin Central Airlines, Inc. These companies have been duly licensed by the civil aeronautics board to operate common-carrier airplanes for the transportation of passengers using the General Mitchell Field. The contracts also relate to the use of the administration building located on the field in the conduct of the business of these common carriers of passengers. As appears in finding of fact No. 9, "Each of said contracts gives to the said air lines the right of ingress to and egress from the said airport and confers the right upon each of said air lines to furnish ground transportation between Milwaukee and the said airport for the passengers using said air lines." The contracts, however, so far as they relate to management, are in the interests of the traveling public and the maintenance

of efficient service essential to the business of the planes and the owner of the airport. It is insisted on the part of the appellants that there are advantages resulting to the intervening defendants, the respondent Boynton Cab Company and its drivers, over others desiring to compete with them. But the cab company has contracted with the air lines to stand by with sufficient transportation facilities to carry patrons to and from the city of Milwaukee. As appears from the facts stated in finding of fact No. 12, there is imposed upon the Boynton Cab Company the obligation to provide transportation service for all passengers using said air lines between the airport and the central business district of the city of Milwaukee. However, the air lines are required to recognize the fact that passengers of said airplanes retain the privilege of choosing the type of transportation they desire in traveling to and from the airport and the business district of the city of Milwaukee. It is to be borne in mind on the question of the existence of a monopolistic result that at the time the contracts were entered into between the Boynton Cab Company and the air lines, some of the air lines attempted to obtain a similar contract from other taxicab companies, "but no other taxicab company operating in the county of Milwaukee will enter into a contract similar to that which was negotiated with the interpleaded defendant, Boynton Cab Company." (See finding No. 13.) The so-called advantages are peculiar to the nature of the business and are warranted as reasonable provisions for convenience and do not go beyond proper limitations in providing accommodation for individuals using the air lines as passengers.

Preceding the adoption of certain ordinances referred to in the statement of facts, ground transportation at the airport was handled by the use of taxicabs, the cabs getting in line in the horseshoe referred to in the findings of fact, moving from the west around the horseshoe. When limousines began to be used for ground transportation, they got into line both

east and west of the administration building and filled the loading space. We here quote the following from appellant's brief:

"The taxicabs, which came into the airport to meet the planes, finding the line next to the administration building full, made a line of their own across the horseshoe street, across from the limousine line. The taxicabs could also park in the limousine line, if there was room for them there. . . .

"After Milwaukee county passed its ordinance sec. 4.07 (8) on June 28, 1949, giving its airport manager power to regulate parking in the horseshoe highway, the airport manager established in this highway two parking stands. The first was for limousines, extending next to the entrance of the administration building west along the horseshoe. The second was for taxicabs across the horseshoe street from the limousine stand, and extending west along the horseshoe. . . .

"Ordinance 4.07 (8) also provided that the drivers of vehicles while on duty and soliciting trade shall remain within ten feet of their vehicles; drivers and operators are prohibited from soliciting in the administration building; except that any permittee under the direction of the airport manager may install a telephone for a starter. . . .

"On July 6, 1949, Constable Louis Hibicke began to enforce the town of Lake taxicab ordinance by arresting Robert De Meaux for driving a Boynton cab in the town of Lake without a license from the town. He also arrested drivers of the Veterans, Radio, and Checker cabs for the same reason. While Hibicke was handing out these tickets for the arrest of these drivers, the airport manager protested, but after a conference with J. P. Robertson, manager of the Boynton Cab Company, told the various drivers to accept those tickets. . . .

"Mr. Schmitz then changed the limousine parking sign to a 'Common Carrier' sign, and when limousines of other cab

companies refused to get out of the 'Common Carrier' line, he issued tickets for their arrest. . . .

"When these cases finally came before Judge BARRY of the Milwaukee county traffic court, he dismissed them for the reason that this ordinance carried no penalty and the rule laid down by Mr. Schmitz had not been published. . . ."

Objection was made by individuals who claimed that the contracts entered into between the air lines operating at the field and the Boynton Cab Company were illegal and monopolistic, pointing to the arrangements made for taxicab stands as they affected the readiness of access to the passengers disembarking from the airplanes, and thus interfering with the opportunity to solicit passengers.

The county of Milwaukee regarding the situation as seriously affecting the business of the airport seeks relief in this suit in equity. The questions involved were presented to the trial court in a thoroughly complete manner. This appears from a record consisting of more than thirteen hundred pages of testimony together with many illuminating exhibits. The learned trial judge, in a very studied analysis of the testimony made the findings of fact. These findings are supported by the evidence and warrant the conclusion of law there reached. We have set forth in the statement preceding this opinion the complete findings of fact and a review of the testimony here is unnecessary beyond an occasional reference thereto. The decision in the circuit court is based on evidence tending to show that the rules regulating the operations of the taxicabs and taxicab drivers are designed to protect the rights of the air-line companies and the traveling public. The traveler is not bound to use the Boynton service, although Boynton agrees to have at hand transportation to be paid for at a fixed rate to be charged to passengers if they choose to use the Boynton service in leaving the airport. The provisions in the contracts respond to the limitations calculated to prevent a monopoly. The contracts are subject to termination,

and any competitor was and is free to compete for the privilege. These contracts of the Boynton Cab Company contain provisions exacting from the company a supply of an available number of cabs, whether used or not, the furnishing of workmen's compensation and personal-injury-damage liability insurance, as well as other stipulations well designed to attract patronage for the air lines of individuals desiring to visit for business or other reasons the city of Milwaukee.

An important fact appears in the case by the certificate issued pursuant to the provisions of ch. 194 of the statutes granting the Boynton Cab Company authority to operate vehicles upon the public highways of the state of Wisconsin as a common motor carrier of passengers over the route "between Billy Mitchell Field (county airport) in the town of Lake, Milwaukee county, on the one hand, and points in the city of Milwaukee, on the other hand, over various city streets, and via South Howell avenue, South Pine avenue, and East Layton avenue between the city limits and Billy Mitchell Field."

Appellants further insist that sec. 85.82, Stats. 1949, does not authorize the engagement of a taxicab or taxicab driver as provided by the arrangement here under discussion, although such cab and driver are duly licensed by the city of Milwaukee. It appears clearly enough that there could be no objection to the use of the cabs by the passengers desiring to go to the airport or to leave the airport in the absence of the arrangement under which this stand-by facility is provided for. A proper journey carrying a passenger from Milwaukee to the airport or a passenger from the airport to Milwaukee does not change its character by reason of the fact that repeated journeys of that nature are made day after day. The legality of a series of acts does not necessarily depend upon the number of them. Under sec. 85.82 the cabs and drivers duly licensed by the city of Milwaukee have the right to visit the airport day after day in the manner set

forth in the findings and stand by in readiness to accommodate the passengers of the airplanes, as the Boynton Cab Company is bound to do under the contract which exists between that company and the airplane companies. They are operating under the provisions providing for interurban carriage and are not operating wholly within the town of Lake. The sphere and extent of the operation of respondents, Boynton Cab Company and Robert De Meaux, is so limited that they are within the terms and provisions of sec. 85.82. The material portion reads: ". . . Any person licensed by any city or village as a chauffeur and operator shall not be required to procure either a chauffeur's and operator's license or a taxicab license in any other municipality for the purpose of carrying taxicab passengers for hire from one municipality to another, but this exception shall not permit such chauffeur or operator to operate a taxicab wholly within the limits of any municipality in which such chauffeur or operator is not licensed." Under this statute the frequency of the operation does not carry over to the town of Lake authority to impose a license fee upon the interpleaded defendants, and they are at liberty to carry on so long as the operations are purely interurban. There is no dispute over the fact that the Boynton Cab Company and the other intervening defendant, Robert De Meaux, were duly licensed in their respective capacities by the city of Milwaukee to operate the cabs. The trial court reached the conclusion that the contracts "entered into between the air lines operating at the said General Mitchell Field and the Boynton Cab Company are not illegal, are not monopolistic, and do not violate the provisions of sec. 27.05, ch. 114, or ch. 133, of the Wisconsin statutes, or any other law of Wisconsin, and are designed to and do in fact provide for safe and efficient ground transportation at a reasonable rate for the air-line passengers at General Mitchell Field."

With the facts as determined and the conclusions based thereon becoming inevitable, other questions involved in this

long dispute are in large measure disposed of, and the town of Lake may not, by ordinance seeking to overthrow or invade the statutes of the state or the ordinances and regulations duly adopted and made by the owner of the airport and its duly authorized agents, do that which would create a situation making it unnecessarily difficult for the county to operate its airport.

The judgment of the trial court holding that the county of Milwaukee "as the owner of General Mitchell Field has the exclusive right to manage said field, including the right to regulate the ground transportation to be furnished to airline passengers arriving at and departing from General Mitchell Field on the property of Milwaukee county, including the entrances to and exits from the said field adjacent to Layton boulevard" must be affirmed.

These exits are not part of the highway. They are on the property of the airport owned by Milwaukee county, and the supervisors of the county in engaging Reginald Schmitz as acting manager of said airport were exercising a duty imposed upon them by the legislation governing the airport. The county, having entered into contracts with the different air lines, all of them duly licensed by the civil aeronautics board to operate common-carrier airplanes, was bound to regulate the matters affecting the use of the field so as to produce efficiency and good order and to prevent confusion which necessarily would arise at an airfield where hundreds of thousands of passengers are annually passing through the gates, and which if left without regulation would hobble operations and seriously interfere with the safety and comfort of the traveling public.

With relation to the validity of the ordinances under which the town of Lake attempts to exercise certain powers by reason of its municipal character, limiting and to some extent exercising control over the service which Milwaukee county is endeavoring to afford those who desire to use the facilities

of the airport, the trial court concluded, and it is considered that it did so correctly, that the ordinances described as Nos. 326 and 333 of the town of Lake are void because they are an attempt to deprive the Boynton Cab Company and Robert De Meaux of their property rights without due process of law. They deny to the Boynton Cab Company and Robert De Meaux the equal protection of the law in violation of sec. 1 of art. I of the constitution of the state of Wisconsin and sec. 1 of the Fourteenth amendment to the Federal constitution. In the judgment entered below, it is declared: "That portion of ordinances Nos. 333 and 335 of the town of Lake, requiring operators and drivers of limousines to obtain licenses from the town of Lake, for the operation of limousines for which the public service commission of Wisconsin has issued permits to operate interurban between the city of Milwaukee and the General Mitchell Field, is illegal and void. . . . That portion of ordinance No. 335 of the town of Lake, which levies a tax against Boynton Cab Company on account of the operation of limousines for which permits have been granted by the public service commission of Wisconsin for interurban service between the city of Milwaukee and General Mitchell Field, is void. . . . The contracts entered into between Milwaukee county and the common-carrier passenger air lines concerning the use by the latter of the facilities of General Mitchell Field, are legal and valid and a proper exercise of the power of Milwaukee county in the management of General Mitchell Field. . . . The contracts entered into between Boynton Cab Company and the air lines operating as common-passenger carriers at General Mitchell Field are legal and valid."

And we agree with the trial court's conclusions that "ordinance No. 336, in so far as it purports to regulate the operations of limousines by the interpleaded defendant, Boyton Cab Company (permits have been issued by the public service commission of Wisconsin to said cab company) is invalid in

that it violates the provision of sec. 194.18 of the Wisconsin statutes, as interpreted by the decision in *Safe Way Motor Coach Co. v. Two Rivers,* 256 Wis. 35. . . . Ordinance No. 336, in so far as it prevents the operator of a taxicab licensed by the city of Milwaukee and a taxicab driver licensed by the city of Milwaukee from daily soliciting passengers at the General Mitchell Airport, violates the provisions of sec. 85.82 of the statutes, and is invalid and void as to the interpleaded defendants, Boynton Cab Company and Robert De Meaux. . . . Ordinance No. 336, in so far as it purports to regulate the contracts entered into between airline operators at General Mitchell Field and Milwaukee county and contracts entered into between said air-line operators and the interpleaded defendant, Boynton Cab Company, is invalid, in that it violates the provisions of sec. 27.05 and ch. 114 of the Wisconsin statutes, and in that it unlawfully interferes with the operation of General Mitchell Field by its owner, the plaintiff, county of Milwaukee."

Because of the facts found to exist and the law applicable thereto, it follows that the town of Lake, its officers and agents, are rightly enjoined and restrained from interfering with Milwaukee county in the operation of the General Mitchell Field and from attempting to regulate the conduct of those lawfully using the property of the Milwaukee county airport, "including the entrances to and exits from the administration building adjacent to Layton avenue, the vehicular traffic to and from said General Mitchell Field, including taxicabs and airport limousines operating pursuant to permits issued by the public service commission of Wisconsin." The judgment entered provides for the recovery of costs of the action, and this provision also must be affirmed.

Among the objections raised by the appellants to the proceedings is one to the effect that the action was not properly commenced. It is true that in the beginning there was no formal authorization directing the bringing of the action.

However, the county board of supervisors did, on October 6, 1949, adopt a resolution approving of all that had been done in the matter of instituting the action and directing the corporation counsel to appear in behalf of Milwaukee county at the trial of said action. Thereafter the trial proceeded, and the trial court announced that Milwaukee county "is recognized as a proper party in this suit." In view of all that occurred in this case and the completeness of the trial, we are of the opinion that no error has occurred in this respect. *Hughes County v. Ward* (C. C.), 81 Fed. 314. In the expediting of business under circumstances such as here prevailed, where no prejudice has resulted, there is every reason for holding that the county board's ratification of the beginning of the action was proper during the pendency of the suit.

*By the Court.*—Judgment affirmed.