Courtesy Cab Company and another, Appellants, v. Johnson, Chief of Police, and another, Respondents.

*April 8—May 3, 1960.*

For the appellants there was a brief and oral argument by *Nathaniel D. Rothstein* and *Jerome D. Grant,* both of Milwaukee.

For the respondents there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, and *Ewald L. Moerke, Jr.,* and *Harvey G. Odenbrett,* assistant city attorneys, and oral argument by *Mr. Moerke* and *Mr. Odenbrett.*

A brief was filed by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Edward D. Cleveland* of counsel, all of Milwaukee, for the Checker Cab Company as *amici curiae.*

DIETERICH, J.    Defendant, Howard Johnson, is the chief of police of the city of Milwaukee. Defendant, Walter Mattison, is the city attorney of said city. Plaintiff, Courtesy Cab Company, is a Wisconsin corporation, operating taxicabs, and has a franchise from the village of Greendale and the village of Hales Corners. Plaintiff, West Allis Taxi Corporation, is a Wisconsin corporation, in such business, and has

a franchise from the city of West Allis and the city of Wauwatosa.

The county of Milwaukee owns and operates General Mitchell Field for airport transportation, landing of commercial and private planes, and the departing thereof. The Milwaukee county board of supervisors enacted an ordinance known as sec. 407, sub. 8 of the general ordinances of said county, relating to the operating of taxicabs and limousines at General Mitchell Field. Under that ordinance, for the right and privilege of operating taxicabs on the premises of said airport, the taxicab operators must pay 25 cents for each cab leaving the airport with one or more passengers, and the operators must abide by the rules and regulations pertaining to the conduct of taxicab operators on the airport premises as may be prescribed from time to time by the airport manager.

The plaintiffs have been authorized and permitted to operate taxicabs on the premises of General Mitchell Field by the airport manager and have been operating their taxicabs into the field to carry for hire passengers who alight from airplanes onto said field, and who desire transportation into the city of Milwaukee or elsewhere.

Plaintiffs' taxicabs take passengers from the airport to destinations in the city of Milwaukee; and sometimes operate from the field to the point of destination in the city of Milwaukee through other cities along the route.

Defendants, respectively, have threatened to make arrests and issue warrants of actions for the recovery of a forfeiture against plaintiffs' cab drivers, who leave the General Mitchell Field terminal building with passengers under all circumstances regardless of whether or not they originate from the airport and travel through other municipalities to the ultimate destination for discharge of passengers in the city of Milwaukee.

Plaintiff Courtesy Cab Company's cab drivers have carried passengers from the field into the city of Milwaukee, and have been arrested and brought into the district court of Milwaukee county, charged with a violation of sec. 100–54, Milwaukee Code of Ordinances; and defendants have threatened to make arrests of cab drivers for transporting passengers from General Mitchell Field into the city of Milwaukee.

General Mitchell Field is owned by Milwaukee county. General Mitchell Field terminal building at which passengers for and from commercial and private airplanes arrive and leave, is located 1,800 feet east of Howell avenue, a street in the city of Milwaukee extending in a northerly and southerly direction and within the city of Milwaukee. Passengers, under the rules and regulations of the airport, can only take or leave taxicabs, or any other vehicle of transport at that building.

The plaintiffs contend and allege in their complaint that under the circumstances they have no adequate remedy at law, and will suffer irreparable damage unless injunctional relief is granted to them.

Sec. 100–54, Milwaukee Code of Ordinances, provides as follows:

*"Permit required; number permitted.* No vehicle shall ply upon the streets of the city without first obtaining a permit from the common council. Such vehicle shall have clearly marked on the right and left side of said vehicle the words, 'Licensed by city of Milwaukee,' as well as the permit number and the name of the owner of the vehicle or the trade name under which the vehicle is operated. Except as hereinafter provided the common council shall have power to issue or refuse any such permit as the public welfare, convenience, or necessity may require, and shall refuse to issue it when it shall find that transportation facilities already available are adequate to meet the public need. Such available transportation facilities shall be considered adequate to meet the public need when there is one taxicab operating in the city of Milwaukee for each of 1,175 of its population. The popula-

tion shall be determined as of the last state or United States census and shall, for the purpose of making proper adjustments under this ordinance, be increased one per cent in 1945, and one per cent each year thereafter until the taking of the next state or United States census. From and after the enactment hereof, not less than 41 taxicab permits shall be issued to applicants, otherwise qualified, and who reside within the city of Milwaukee, and have resided within said city of Milwaukee for two years prior to the filing of said application, and who have been honorably discharged from service in the armed forces of the United States, during World Wars I or II, if such honorably discharged veteran applicant shall have filed an application with the city clerk for such permit. Any one or more of such 'veteran' permits may be issued jointly to such veteran and to an organization of such veterans formed for taxicab operational purposes; provided, that the charter or articles of association of such an organization have first been filed with the city clerk and the same have been approved by the city attorney. The joint permit shall terminate automatically as to both joint permittees upon the death of the individual joint permittee.''

Under sec. 100–62 of the ordinances, permits granted may be revoked or suspended at any time for such cause as may be deemed to be sufficient by the common council.

Under sec. 100–74 of the ordinances, a driver's license may be revoked at any time by the common council for cause.

Sec. 100–84 of the ordinances provides for penalties: Any owner or driver of a vehicle violating any provisions of ch. 100, Milwaukee Code of Ordinances, shall upon conviction be punished by a fine of from $10 to $100, or in default of payment, by to ninety days' imprisonment in the house of correction; and in addition to the fine or imprisonment, any permit or license shall be subject to revocation upon conviction for any violation of any provisions of said ch. 100.

All acts of legislative bodies are presumed to be constitutional unless established otherwise by a competent tribunal. The party attacking an ordinance has the burden of overcoming the presumption of constitutionality and showing

that the ordinance is unconstitutional. If there are any reasons which can fairly have weight, the reasons for a given ordinance are for the legislative body and not for the courts. If there is any reasonable basis on which the legislative body may constitutionally rest a statute, the court must sustain it. *State ex rel. Broughton v. Zimmerman* (1952), 261 Wis. 398, 411, 52 N. W. (2d) 903; *State v. Stehlek* (1953), 262 Wis. 642, 645, 56 N. W. (2d) 514; and *Borden Co. v. McDowell* (1959), 8 Wis. (2d) 246, 99 N. W. (2d) 146.

It is an elementary principle of law in this state that courts will not interfere with the exercise of police power by a municipality unless the exercise of such police power is clearly illegal. Such police power embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety. *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 154, 196 N. W. 451; *Chicago, B. & Q. R. Co. v. Drainage Commissioners* (1906), 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596; and *Highway 100 Auto Wreckers v. West Allis* (1959), 6 Wis. (2d) 637, 96 N. W. (2d) 85, 97 N. W. (2d) 423.

The transportation of passengers for hire in a taxicab upon the streets of a city is not an inherent right, but a privilege which the city, in the exercise of its discretion, may grant or refuse, with the exception and limitation contained in sec. 349.24 (2), Stats.

The type of business involved in this action is that which originates at the terminal building of General Mitchell Airport and concludes in the city of Milwaukee.

*Statutory Provisions Covering Airport.*

General Mitchell Field was created under ch. 114, Stats., entitled "Aeronautics."

Sec. 114.013 provides:

"DEFINITIONS. . . .

"(3) 'Airport' means any area of land or water which is used, or intended for use, for the landing and take-off of aircraft, and any appurtenant areas which are used, or intended for use, for airport buildings or other airport facilities or right of ways, together with all airport buildings and facilities located thereon. . . .

"(10) 'Municipality' means any county, city, town, or village of this state."

"[Section] 114.105 LOCAL REGULATION. Any county, town, city, or village may adopt any ordinance in strict conformity with the provisions of this chapter and impose the same penalty for violation of any of its provisions except that such ordinance shall not provide for the suspension or revocation of pilot or aircraft licenses or certificates and shall not provide for imprisonment except for failure to pay any fine which may be imposed. No local authority shall enact any ordinance governing aircraft or aeronautics inconsistent with the provisions of this chapter. Every court in which a violation of such ordinance is prosecuted shall make a written report of any conviction . . . to the federal civil aeronautics administration."

"[Section] 114.14 EQUIPMENT, CONTROL OF AIRPORT; EXPENSE; REGULATIONS. (1) The governing body of a city, village, town, or county which has established an airport . . . may construct, improve, equip, maintain, and operate the same, or may vest jurisdiction for the construction, improvement, equipment, maintenance, and operation thereof in any suitable officer, board, or body of such city, village, town, or county. . . . The governing body of a city, village, town, or county may adopt regulations, and establish fees or charges for the use of such airport or landing field, or may authorize an officer, board, or body of such village, city, town, or county having jurisdiction to adopt such regulations and establish such fees or charges, subject however to the approval of such governing body before they shall take effect.

"(2) The governing body of a city, village, town, or county which has established an airport may vest jurisdiction for the construction, improvement, equipment, maintenance,

and operation thereof in an airport commission of three commissioners. . . . Such commission shall have complete and exclusive control and management over the airport for which it has been appointed. . . ."

Milwaukee county is a municipality for airport purposes by virtue of ch. 114, Stats. As such, it has the power to pass ordinances and promulgate rules and regulations necessary for the proper exercise of the governmental functions in connection with General Mitchell Field as set forth in the statutes. However, the land area over which the county exercises its jurisdiction is physically located within the boundaries of other municipalities, to wit: City of Milwaukee, city of Oak Creek, city of St. Francis, and city of Cudahy. *Milwaukee County v. Lake* (1951), 259 Wis. 208, 48 N. W. (2d) 1.

In this respect, the municipality created by ch. 114, Stats., is similar to, and can be compared in some respects to, a school district. It is an independent unit of government whose corporate identity is not merged in that of any other municipality. In *State ex rel. Harbach v. Mayor* (1926), 189 Wis. 84, 206 N. W. 210, and cases cited therein, it was held that although the boundaries of a school district may be coterminous with those of a city, there is no merger of the school-district affairs with the city affairs, as the two units of government remain separate and distinct for the purpose of exercising separate and distinct powers for the accomplishment of separate and distinct purposes.

However, where a quasi corporation, in this case the General Mitchell Field, is authorized by the legislature and its boundaries are coterminous with all or a part of another entity or municipality, the ordinances of the prime municipality, the city of Milwaukee, do not automatically become inoperative and of no force and effect. As long as the quasi corporation, the General Mitchell Field operated by Milwaukee county, does not specifically exercise such power granted to

it by the legislature, the ordinances of the city of Milwaukee apply. However, when the quasi corporation, or in this case Milwaukee County General Mitchell Airport, legislates within the area of its own governmental function designated by the legislature, then that ordinance supersedes that of the city of Milwaukee. A quasi corporation receiving its authority from the legislature has the sole and exclusive right to legislate in those fields necessary to accomplish the distinct purpose for which it was formed. But until that right to legislate has been exercised, an ordinance of the prime municipality remains effective so long as that ordinance is not contrary to, nor inconsistent with, the existence of the quasi corporation and the carrying out of the functions and duties imposed upon it by the statutes.

The power of the city of Milwaukee to enact ordinance sec. 100–54 emanates from the authority granted in and by sec. 349.24, Stats. 1957, formerly sec. 85.82, created by ch. 454, Laws of 1929, and as amended subsequently. Sec. 349.24 provides:

"AUTHORITY TO LICENSE TAXICAB OPERATORS AND TAXICABS. (1) The council of any city and every village board may:

"(a) Regulate and license chauffeurs and operators of taxicabs used for hire;

"(b) Regulate and license the taxicab business by licensing each taxicab used for hire;

"(c) Prohibit any person from operating any motor vehicle for taxicab purposes upon the highways of such city or village unless such person is licensed as a chauffeur and operator and unless such taxicab business is licensed by the licensing of each taxicab;

"(d) Revoke any license mentioned in this section when in its judgment the public safety so requires.

"(2) Any person licensed by any city or village as a chauffeur and operator shall not be required to procure either a chauffeur's and operator's license or a taxicab license in any other municipality for the purpose of carrying taxicab passen-

gers for hire from one municipality to another, but this exception does not permit such chauffeur or operator to operate a taxicab wholly within the limits of any municipality in which such chauffeur or operator is not licensed."

Sec. 349.24 (2), Stats., provides in substance that any person licensed as a chauffeur and operator in one municipality need not obtain a chauffeur's or operator's license from another municipality for the purpose of carrying passengers for hire from one municipality to another.

Let us assume that an operator holding a taxicab license issued by the city of West Allis, this being his point of origin, picked up a passenger in the city of West Allis and transported him to the city of Milwaukee or any other destination in any other municipality—this he would be permitted to do under the statute, and would be a valid operation of his cab, under the license in which the trip originated. Sec. 349.24 (2), Stats., further provides that the exception does not permit such licensed chauffeur, operator, or taxicab to operate wholly within the limits of any municipality in which he is not licensed.

The plaintiffs' cabs have their origin in their respective communities wherein they are licensed, their first destination, under the complaint in this case, is General Mitchell Field. However, when they pick up passengers or fares at the airport and then transport them to any point within the city limits of the city of Milwaukee, the point of origin then is the airport, the destination the city of Milwaukee. The General Mitchell Field, also known as Milwaukee County Airport, is a municipality created under ch. 114, Stats., and the record failing to disclose the adoption by it of any ordinance licensing cabs, chauffeurs, or cab drivers, we hold that the plaintiffs' cabs are being operated wholly within the limits of the city of Milwaukee as defined in sec. 349.24 (2), Stats., and the ordinances adopted by the city of Milwaukee pursuant to said sec. 349.24 (1) and (2) are valid.

The judgment of the trial court sustaining the defendants' demurrer to the plaintiffs' complaint is affirmed.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*concurring*). I do not think we need to decide or imply in this case that because the county is referred to in ch. 114, Stats., as a "municipality," the county *airport* is therefore a "municipality" as used in sec. 349.24 (2), Stats. All we need to decide now is that sec. 349.24 (2) authorizes a licensed taxicab operator to carry passengers on trips where either the point of origin or destination is within the city or village in which he is licensed, but does not authorize him to carry passengers on trips where neither the point of origin nor point of destination is in the city or village in which he is licensed. There has been no claim in this case that the county has, pursuant to ch. 114, Stats., enacted any ordinance which is in conflict with the taxicab ordinance of the city, and the county is not a party to this action claiming that its operation of the county airport under ch. 114, Stats., is burdened by enforcement of the Milwaukee ordinance, or that ch. 114, Stats., impliedly empowers the county to authorize cab operators licensed in one city or village to carry passengers from the airport to others, notwithstanding sec. 349.24. Cf. *Milwaukee County v. Lake* (1951), 259 Wis. 208, 48 N. W. (2d) 1.

I am authorized to state that Mr. Chief Justice MARTIN and Mr. Justice BROWN join in this opinion.