COUNTY OF MILWAUKEE, Plaintiff-Respondent,

v.

Lawrence C. WILLIAMS, Defendant-Appellant.†
[Case No. 2005AP2686.]

COUNTY OF MILWAUKEE, Plaintiff-Respondent,

v.

Russell L. HEGNEY, Defendant-Appellant.†
[Case No. 2005AP2687.]

Court of Appeals

*Nos. 2005AP2686, 2005AP2687. Submitted on briefs
June 6, 2006.—Decided June 27, 2006.*

2006 WI App 153

(Also reported in 720 N.W.2d 177.)

† Petition to review granted 10/06/06.

391

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Peter C. Carstensen* of the University of Wisconsin Law School, of Madison, and *Douglas P. Dehler* of *Shepherd, Finkelman, Miller & Shah, LLC*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *E. Michael McCann*, district attorney, and *Thomas J. McAdams*, assistant district attorney, of Milwaukee, and *William J. Domina* and *Timothy R. Karaskiewicz* of the Milwaukee County Office of Corporation Counsel.

Before Wedemeyer, P.J., Curley and Kessler, JJ.[1]

¶ 1. CURLEY, J.   Lawrence C. Williams and Russell L. Hegney appeal from the judgments[2] entered after they were found guilty of violating Milwaukee County Ordinance 4.05 (Ordinance 4.05), for picking up taxicab passengers at General Mitchell International Airport (GMIA or the airport) without an airport permit, and were each fined $250. Williams and Hegney

---

[1] This case was originally to be decided by one judge, pursuant to Wis. Stat. § 752.31(2)(b) (2003–04). On April 28, 2006, the chief judge issued an order, *sua sponte,* declaring that this case would be considered by a three-judge panel.

[2] On January 9, 2006, this court granted Williams and Hegney's motion to consolidate their cases, Nos. 2005AP2686 and 2005AP2687, for appeal.

contend that: (1) Ordinance 4.05 is invalid because Milwaukee County (the County) lacks the authority to enact an ordinance prohibiting certain taxicabs from picking up passengers at GMIA; (2) Ordinance 4.05 is void because it conflicts with Wisconsin Statutes, specifically Wis. Stat. §§ 349.24(1) and 194.02 (2003–04); and (3) the Ordinance violates the spirit of the antitrust law set forth in Wis. Stat. § 133.01.[3]

¶ 2. This court concludes that Wis. Stat. § 114.14 gives Milwaukee County the authority to regulate taxicab operations at the airport, that no other Wisconsin statute conflicts with that authority, and that the state antitrust statute does not apply to the County in this instance because specific statutory authority was given to the County to operate the airport. Therefore, Ordinance 4.05 is valid. Consequently, the judgments of conviction are affirmed.

## I. BACKGROUND.

¶ 3. Until the late 1980s, taxicab transportation at the GMIA was unregulated. Taxicab transportation operated under an "open" system under which any taxicab driver who wished to seek a fare at GMIA was allowed to do so. Because GMIA did not have the room for an organized waiting area for taxicabs, and because the staging area in front of the terminal at GMIA can accommodate only four taxicabs at a time, the open system led to a number of problems. The problems included congestion in front of the terminal, fights between drivers, hazardous conditions for passengers arriving on foot, instances when taxicab drivers who sometimes waited hours for a fare subsequently refused

---

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

short-distance fares, and instances when passengers endured long waits because no taxicabs were available.

¶ 4.  In response to these problems, in 1990 Milwaukee County enacted Ordinance 4.05. Ordinance 4.05 regulates commercial ground transportation at GMIA, and permits only taxicab drivers who have a license issued by a city, town or village, in accordance with WIS. STAT. § 349.24, *and* an additional permit from the airport, to pick up passengers at GMIA. Milw. County Ord. 4.05(3)(b)(1). The ordinance also limits the number of permits issued by the County to fifty. Milw. County Ord. 4.05(3)(b)(3)(a). While the ordinance prohibits taxicabs without permits from picking passengers up, it does not prohibit other taxicabs from dropping passengers off at GMIA. Milw. County Ord. 4.05(3)(b)(5). The ordinance does not apply to limousines. Milw. County Ord. 4.05(6). At issue in this appeal is the validity of Ordinance 4.05.

¶ 5.  The facts leading up to this appeal are undisputed. Williams and Hegney are taxicab drivers who are licensed in the City of Fond du Lac. The two men are employed by Quality Cab Co., a licensed taxicab company that operates out of Fond du Lac and has contracts with several local businesses to transport employees and business associates to and from GMIA. On separate occasions, in January of 2005, Hegney and Williams arrived at GMIA in response to requests by customers for transportation from GMIA to Fond du Lac. Neither driver had a permit giving them permission to pick up passengers at GMIA. While attempting to pick up their passengers, both drivers were issued citations for violating Ordinance 4.05(3)(b)(5).

¶ 6.  Williams and Hegney do not dispute that they lacked the permits required under Ordinance 4.05 when they picked up customers. They contested their

citations on the grounds that Ordinance 4.05 is invalid, and as a result, they moved to dismiss the citations. They argued that the County did not have the authority to enact an ordinance that prohibits certain taxicabs from picking up passengers at GMIA, and that even if the County did have such authority, the ordinance conflicts with WIS. STAT. §§ 349.24 and 194.02 and is, consequently, void. Further, they claim the ordinance violates the antitrust law embodied in WIS. STAT. § 133.01. The trial court denied the motion, and in a written decision concluded:

> Wis. Stats. Sec. 114.14(1) provides that a County which has established an airport may maintain and operate the airport. The issue with regard to taxicab regulation at the airport appears to be well settled law as far back as 1951. In *Milwaukee County v. Town of Lake,* 259 Wis. 208, (1951), the Wisconsin Supreme Court recognized the exclusive right of the County of Milwaukee to manage the airport and particularly to regulate ground transportation to be furnished airline passengers arriving and departing on its property. Similar issues of illegality and monopoly were presented and the Supreme Court validated the County's actions. The County can regulate taxicabs at GMIA.

> Additionally, Wis. Stats. Chapter 194 is inapplicable on this issue. It applies to regulation of common motor carriers and specifically excludes taxicabs by definition in 194.01(1). The definition of municipality under Wis. Stats. Sec. 194.02 is then not relevant. The county ordinance is not in conflict with that Chapter.

> Further,[]Wis. Stats. Section 349.24(2) is inapplicable on this issue. It is superseded by the more specific statute sec. 114.14(1) regarding airport operations.

Neither is there any indication how the County is violating public interest goals of airport operation to be contrary to Wis. Stats. Chapter 133.

¶ 7. In lieu of a trial, the parties thereafter stipulated to the facts at issue, and Williams and Hegney were ordered to pay fines of $250. Williams and Hegney now appeal.

## II. ANALYSIS.

### A. Statutes and subsequent case law authorize the County to regulate taxicabs at the airport.

¶ 8. Williams and Hegney first contend that the trial court erred in its decision finding statutory authority for Ordinance 4.05 because there is no statutory authority for the County to regulate taxicab service at the airport.

¶ 9. Ordinance 4.05 provides, in pertinent part:

(1) *Purpose.* The purpose and intent of this section is to regulate all commercial ground transportation including prereserved (reservation) service, by the issuance of permit(s) to both those owning or operating a commercial ground transportation service and those driving commercial ground transportation vehicles at General Mitchell International Airport. Prereserved (reservation) service means ground transportation that is contracted for prior to the actual time passengers are picked up.

. . . .

(3) *Taxicabs.*

(a) *Definition.* "Taxicab" under this section is a motor vehicle regularly engaged in the business of carrying passengers for hire, with heating and air conditioning, be in good operating condition, metered, and not operated on an affixed route.

396

(b) *License, permits, fees.*

(1) An owner or operator of a taxicab shall not do business or attempt to do business on General Mitchell International Airport unless such owner or operator has been licensed as owner or operator of a taxicab business by any city, village or town consistent with Wis. Stats. § 349.24, and unless such license remains in full force and effect.

. . . .

(3)(a) On and after September 1, 1990, taxicab owner permits will be issued only to those owners whose vehicle(s) have been permitted during the period October 1, 1989, through July 5, 1990. Taxicab owner permits must be renewed and remain in full force and effect on a continuous basis, in accordance with subparagraph (b) below. In the event an owner does not renew the taxicab owner permit prior to the annual dates prescribed herein below, that owner shall forfeit his/her privilege to operate at the airport. At such time that the total number of taxicab permits issued decreases below fifty (50), additional permits, to maintain the total issued at fifty (50), will be issued to those taxicab owners who are on the waiting list. Permits will be issued based upon date of request on the waiting list. In the event of extraordinary circumstances, i.e. large conventions, inclement weather or inability of the permitted taxicab fleet to meet immediate passenger demand, the airport director or his/her designated representative is authorized to request temporary taxicab service from local providers in order to meet such extraordinary demand. Additional taxicabs will follow all policies, rules and regulations pertaining to the operation of taxicabs at General Mitchell International Airport.

. . . .

(5) Any person who is not in possession of the necessary permits required under this section and who operates a taxicab at General Mitchell International Airport in such a manner as to constitute doing business, or who attempts to do business thereon shall, without limitation because of enumeration, be deemed to be in violation of chapter 4 of the Code. A taxicab driver entering upon General Mitchell International Airport for the sole purpose of discharging a taxicab patron at said airport shall not be deemed to be doing business thereon if, after discharging said passenger, he/she shall immediately leave the airport premises.

¶ 10. We observe that "[a]ll acts of legislative bodies are presumed to be constitutional unless established otherwise by a competent tribunal. The party attacking an ordinance has the burden of overcoming the presumption of constitutionality and showing that the ordinance is unconstitutional." *Courtesy Cab Co. v. Johnson*, 10 Wis. 2d 426, 431–32, 103 N.W. 2d 17 (1960).

¶ 11. We first look to Chapter 114, entitled "Aeronautics," to see if the legislature has passed laws affecting the County's authority over the airport. Contained in Chapter 114 is WIS. STAT. § 114.14(1), which authorizes the county to adopt regulations with regard to the operation and use of the airport.[4]

---

[4] WISCONSIN STAT. § 114.14(1) provides:

**Equipment, control of airport; expense; regulations.**

**(1)** *The governing body of a* city, village, town or *county which has established an airport* or landing field, or landing and take-off strip, and acquired, leased or set apart real property for such purpose *may* construct, improve, equip, maintain and *operate the same,* or may vest jurisdiction for the construction, improvement, equipment, maintenance and operation thereof in any suitable officer, board or body of such city, village, town or county. The

¶ 12. Williams and Hegney point out that the word "taxicab" is nowhere to be found in WIS. STAT. § 114.14, and that the statute gives the County the authority to only "operate" the airport. We disagree. As later case law clearly establishes, the operation of an airport includes regulating taxicabs that are picking up passengers.

¶ 13. Challenges to Milwaukee County's operation of the airport and its regulation of taxicabs go back as far as 1951, when, in *Milwaukee County v. Town of Lake*, 259 Wis. 208, 48 N.W.2d 1 (1951), the Town of Lake claimed that: "the county of Milwaukee, the owner of the airport, has exceeded its authority in the exercise of its controlling power with relation to ground transportation within the airport." *Id.* at 225. In ruling against the Town of Lake, the supreme court observed that Chapter 114 of the Wisconsin Statutes authorizes a municipality to own and operate an airport and permits the municipality's governing body to "provide for the enforcement of regulations duly adopted by the municipality." *Id.* at 224. Further, the court affirmed the trial court's judgment that "the county of Milwaukee 'as the owner of [the airport] has the exclusive right to manage said field, including the right to regulate the ground transportation to be furnished to airline passen-

---

expenses of such construction, improvement, equipment, maintenance and operation shall be a city, village, town or county charge as the case may be. *The governing body of a* city, village, town or *county may adopt regulations,* and *establish fees or charges for the use of such airport* or landing field, or may authorize an officer, board or body of such village, city, town or county having jurisdiction to adopt such regulations and establish such fees or charges, subject however to the approval of such governing body before they shall take effect.

(Emphasis added.)

gers arriving at and departing from [the airport].' " *Id.* at 232 (quoting trial court decision). In so ruling, the court affirmed that the airport, not the Town of Lake, was the proper authority to determine which taxicabs picked up passengers at the airport.

¶ 14. Several years later, another airport taxicab dispute reached the supreme court. In *Courtesy Cab,* the issue dealt with whether taxicab drivers from municipalities outside the city of Milwaukee could pick up passengers at the airport and deliver them to places within the City of Milwaukee without a City of Milwaukee permit. *Id.*, 10 Wis. 2d at 429–30. Although not directly on point, the case discussed the powers of Milwaukee County in regulating the airport:

> Milwaukee county is a municipality for airport purposes by virtue of ch. 114, Stats. As such, it has the power to pass ordinances and promulgate rules and regulations necessary for the proper exercise of the governmental functions in connection with General Mitchell Field as set forth in the statutes.

*Id.* at 434.

> The General Mitchell Field, also known as Milwaukee County Airport, is a municipality created under ch. 114, Stats., and the record failing to disclose the adoption by it of any ordinance licensing cabs, chauffeurs, or cab drivers, we hold that the plaintiffs' cabs are being operated wholly within the limits of the city of Milwaukee as defined in sec. 349.24(2), Stats., and the ordinances adopted by the city of Milwaukee pursuant to said sec. 349.24(1) and (2) are valid.

*Id.* at 436. The holding validated the County's authority to regulate taxicabs and went so far as to remark that the County could license taxicabs. Thus, these cases support the County's view that WIS. STAT. § 114.14(1)

gives the County the authority to regulate ground transportation, including taxicabs, at the airport.

¶ 15. The combination of the statutory authority, coupled with the two cases affirming the County's authority to regulate ground transportation, convince us that while the word "taxicab" is not found in Wis. Stat. § 114.14(1), the County has the clear authority to pass an ordinance requiring taxicabs to obtain permits to pick up passengers at the airport.

*B. No statutes conflict with the ordinance.*

¶ 16. Williams and Hegney next claim that Ordinance 4.05 conflicts with existing statutes and is thus void. Citing *DeRosso Landfill Co., Inc. v. City of Oak Creek*, 200 Wis. 2d 642, 547 N.W.2d 770 (1996), Williams and Hegney claim that Ordinance 4.05 conflicts with Wis. Stat. §§ 349.24 and 194.02.

¶ 17. In *DeRosso*, the supreme court reiterated the long-standing rule that a municipality cannot pass laws which conflict with state statutes: "where 'the state has entered the field of regulation, municipalities may not make regulation inconsistent therewith' because " 'a municipality cannot lawfully forbid what the legislature has expressly licensed, authorized or required, or authorize what the legislature has expressly forbidden.' " 200 Wis. 2d at 651 (quoting *Fox v. Racine*, 225 Wis. 542, 546, 275 N.W. 513 (1937) (citation omitted). *DeRosso* explains:

> Summarizing the court's preemption analysis, the *Anchor [Savings & Loan Ass'n v. Madison EOC*, 120 Wis. 2d 391, 355 N.W.2d 234 (1984)] court outlined four tests to determine when a state statute invalidates a local ordinance. A municipal ordinance is preempted if (1)

the legislature has expressly withdrawn the power of municipalities to act; (2) it logically conflicts with state legislation; (3) it defeats the purpose of state legislation; or (4) it violates the spirit of state legislation. Should any of these tests be met, the municipal ordinance is void.

*DeRosso*, 200 Wis. 2d 642 at 651–52 (footnotes omitted).

■

¶ 18.    "The question of whether a statute preempts a municipal ordinance raises a question of law which we review independently, benefiting from the analyses of the circuit court and the court of appeals." *Id.* at 652.

¶ 19.    We first tackle the question as to whether WIS. STAT. § 349.24 conflicts with the County ordinance.

■

¶ 20.    WISCONSIN STAT. § 349.24 authorizes a city, village or town board to license taxicabs. It reads:

**Authority to license taxicab operators and taxicabs. (1)** The council of any city and every village or town board may:

(a) Regulate and license chauffeurs and operators of taxicabs used for hire;

(b) Regulate and license the taxicab business by licensing each taxicab used for hire;

(c) Prohibit any person from operating any motor vehicle for taxicab purposes upon the highways of the city, village or town unless the person is licensed as a chauffeur and operator and unless the taxicab business is licensed by the licensing of each taxicab;

(d) Revoke any license mentioned in this section when in its judgment the public safety so requires.

**(2)** Any person licensed by any city, village or town as a chauffeur and operator shall not be required to procure either a chauffeur's and operator's license or a taxicab

license in any other municipality for the purpose of carrying taxicab passengers for hire from one municipality to another, but this exception does not permit the chauffeur or operator to operate a taxicab wholly within the limits of any municipality in which the chauffeur or operator is not licensed.

(3) Any person licensed under this section is required to comply with the licensing requirements of ch. 343.

Williams and Hegney argue that because they have been properly licensed by the City of Fond du Lac, and the statute expressly prohibits a city, village or town from requiring a taxicab licensed elsewhere to obtain a license in that community in order to carry taxicab passengers from one location to another, the County ordinance conflicts with the statute and consequently is void. We disagree.

¶ 21.   As noted, WIS. STAT. § 349.24 addresses the licensing authority of a "city, village or town." It contains no references to a "county," and makes no mention of an "airport." Consequently, it is inapplicable to the County. Also, this statute's purpose is to free a taxicab owner from having to obtain a license in every city, village or town that a taxicab may pass through in transporting a customer to his or her destination. The purpose behind the requirement of an airport permit is not the same as the purpose of § 349.24. The airport permits are required for the safety of the traveling public and to alleviate congestion at the airport. The uniqueness of an airport setting is acknowledged by the legislature's passage of Chapter 114. Chapter 114, as interpreted in two supreme court cases, *Town of Lake* and *Courtesy Cab*, gives authority to the county to regulate the ground transportation of passengers, including taxicabs. Section 349.24 is not in conflict with the ordinance.

¶ 22.   Moreover, even if Wis. Stat. § 349.24 applied to county airport permits, the specific statute found in Wis. Stat. § 114.14, authorizing the operation of an airport, trumps the general taxicab licensing statute of § 349.24. "When two statutes relate to the same subject matter, the specific statute controls over the general statute." *Wieting Funeral Home of Chilton, Inc., v. Meridian Mut. Ins. Co.*, 2004 WI App 218, ¶ 15, 277 Wis. 2d 274, 690 N.W.2d 442.

¶ 23.   With regard to Wis. Stat. § 194.02, Williams and Hegney claim that the purpose of the statute also conflicts with the ordinance, rendering the ordinance void. Section 194.02 reads:

> It is the intent of the legislature to remove the economic regulations which limit motor carrier operations in the state. The legislature intends to let the market promote competitive and efficient transportation services, while maintaining the safety regulations necessary to protect the welfare of the traveling and shipping public. It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of a safe, competitive transportation industry.

They submit that in passing this law, the legislature established a policy to promote open and free trade in the transportation industry, and the airport permit limitations run counter to this policy. The answer to the question of whether any conflict exists between Wis. Stat. § 194.02 and Ordinance 4.05 is a simple one. The answer can be found in the definitions section found in Wis. Stat. § 194.01, where taxicabs are specifically exempted from coverage. In defining a "common motor carrier," the statute reads:   "The transportation of pas-

sengers in taxicab service . . . with a passenger-carrying capacity of less than 16 persons . . . shall not be construed as being that of a common motor vehicle." Thus, this statute cannot possibly conflict with the ordinance because taxicabs are specifically exempted from the policies and regulations imposed by the chapter. Again, even if taxicabs were not exempt, the intent of the legislature to "promote competitive and efficient transportation services" does not necessarily lead to the conclusion that requiring airport permits for taxicabs picking up passengers conflicts with this policy consideration, because regulating the number of taxicabs entering the airport could very well "promote competitive and efficient transportation services." *See* § 194.02.

## C. *The County is not subject to the antitrust law.*

■

¶ 24. Williams and Hegney's final argument is that the County violated the antitrust law embodied in WIS. STAT. § 133.01. This statute states the legislative intent behind the passage of Chapter 133 dealing with trusts and monopolies. It reads:

> The intent of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition. It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition. It is the intent of the legislature to make competition the fundamental economic policy of this state and, to that end, state regulatory agencies shall regard the public interest as requiring the preservation and promotion of the maximum level of com-

> petition in any regulated industry consistent with the other public interest goals established by the legislature.

*Id.* The drivers contend that the airport's regulation of taxicabs and the County's fifty-permit limit violate the legislative intent of the chapter "to make competition the fundamental economic policy of this state." They point to two Wisconsin cases, as well as foreign case law, for support. The first case cited is *American Medical Transport of Wisconsin, Inc. v. Curtis-Universal, Inc.*, 154 Wis. 2d 135, 452 N.W.2d 575 (1990), where our supreme court struck down the City of Milwaukee's attempt at regulating ambulances throughout the city. The second case is *Cedarhurst Air Charter, Inc. v. Waukesha County*, 110 F. Supp. 2d 891 (E.D. Wis. 2000), where a federal judge struck down, on federal antitrust law grounds, Waukesha airport authority's attempt to require fuel services to be purchased from only one vendor.

¶ 25.  Finally, they contend that even if "traffic or other considerations warranted some regulation of competition at GMIA, it must be done in the least restrictive manner to achieve the legislatively defined goals." They claim the current ordinance falls short of this goal. We remain unpersuaded by both arguments.

¶ 26.  First, Wɪs. Sᴛᴀᴛ. § 133.01 does not prohibit all regulation of competition, rather, its intent is to prohibit "unfair and discriminatory business practices." The statute also acknowledges that the stated policy determination that "competition should drive the economics of our state" is modified by the language "consistent with the other public interest goals established by the legislature." One of those other legislative public interest goals is the regulation of the airport. Thus, the

legislature's passage of statutes giving the County the power to operate and regulate the airport falls within the "other public interest goals" mentioned in § 113.02. Consequently, even if the County qualifies as a "state regulatory agency" referenced in § 113.02, the legislature has given to it the authority to regulate the airport, including its ground transportation system, and implicit in handing this authority to the County is that policy considerations for operating an airport may conflict with the general policies expressed in Chapter 113.

¶ 27. Further, this conclusion is supported by Wisconsin case law. In *Town of Hallie v. City of Chippewa Falls*, 105 Wis. 2d 533, 314 N.W.2d 321 (1982), and *Town of Neenah Sanitary District No. 2 v. City of Neenah*, 2002 WI App 155, 256 Wis. 2d 296, 647 N.W.2d 913, challenges based on antitrust grounds were raised to the municipality's attempt to regulate sewerage. In *Town of Hallie*, our supreme court determined that the appropriate test to be applied when a municipality is charged with violating the state antitrust statute is "whether the legislature intended to allow municipalities to undertake such actions." 105 Wis. 2d at 539. "Such a determination involves an analysis of the home rule powers of cities, the type of conduct undertaken by a city in a particular instance, and the general statutory framework set up by the legislature in the particular field." *Id.* In applying the test here, it is clear that the legislature, by passing Chapter 114, gave to the County a broad mandate to operate the airport. Also, as noted, several supreme court cases have agreed that this authority includes the County's regulation of taxicabs. For these reasons, the County is not in violation of the state antitrust statute for having passed

Ordinance 4.05 because the legislature intended the County to "undertake such actions" with respect to the airport.

¶ 28.  We also do not find the cases cited by Williams and Hegney to be applicable to this dispute. In *American Medical Transport*, the city was not relying on any statutory authorization for its claimed ability to regulate ambulances, but rather, its home rule powers. 154 Wis. 2d at 146–47. Here, statutory authority exists for the County's actions.[5]

¶ 29.  Nor are we persuaded that *Cedarhurst Air Charter* is dispositive. *Cedarhurst Air Charter* dealt with airport regulations, but there the federal court said that requiring airplane fuel to be purchased from only one provider falls outside Chapter 114 and violated federal antitrust law. 110 F. Supp. 2d at 893–95. Unlike *Cedarhurst Air Charter*, as discussed earlier, two cases, *Town of Hallie* and *Courtesy Cab*, have emerged from our supreme court that have determined that taxicab regulation clearly falls within the superintending power of the County under Chapter 114.[6]

¶ 30.  Finally, we disagree with Williams and Hegney's alternative argument that even if some authority existed for the County's ordinance, it is unduly restrictive. As we have already concluded, the County is permitted to skirt the state antitrust statute because it falls within the test set forth in the *Town of Hallie*, having been given specific legislative mandate to oper-

---

[5] In addition, charges of conspiracy were also brought against the city, whereas here, the airport permits are held by seventeen different cab companies, belying any concerns about conspiracies or monopolies.

[6] We also conclude that the foreign case law cited by Williams and Hegney does not override Wisconsin precedent.

ate the airport, and thus, the County is not compelled to pass ordinances that are the least restrictive.

¶ 31.   In sum, we conclude that the County was given authority by the legislature to regulate taxicabs, Ordinance 4.05 does not conflict with any other statutes, and the County is not subject to the state antitrust statute in its operation of airport taxicabs. Consequently, we affirm the trial court's decision.

*By the Court.*—Judgments affirmed.